**CITY OF BEACHWOOD, Appellee,**

v.

**SIMS, Appellant.**

[Cite as *Beachwood v. Sims* (1994), 98 Ohio App.3d 9.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 66337, 66338.

Decided Oct. 3, 1994.

*Louis H. Orkin,* Law Director, *Judith A. Carlin,* Assistant Law Director, and *Avery H. Fromet,* for appellee.

*John F. Norton,* for appellant.

---

HARPER, Presiding Judge.

Defendant-appellant, Mark Sims, appeals from the denial of his motion to suppress by the Shaker Heights Municipal Court. Subsequent to the ruling on appellant's motion, a jury found him guilty of driving while under the influence of alcohol in violation of Section 434.01(A) of the Codified Ordinances of the city of Beachwood ("C.O. 434.01[A]"). Appellant was also found guilty of operating a vehicle with a prohibited blood-alcohol level.[1] Appellant's sentence was stayed pending the outcome of this appeal.

The trial court held a hearing on appellant's motion to suppress on April 22, 1993. Two witnesses testified on behalf of plaintiff-appellee, the city of Beachwood: Patrolmen Reiley and Curtiss.

---

1. Appellant's conviction for operating a vehicle with a prohibited blood-alcohol level was merged into his conviction for driving while under the influence of alcohol pursuant to R.C. 4511.19(C).

Patrolman Robert Reiley testified that he received a dispatch on March 17, 1993 at approximately 8:36 p.m. The call was passed through by a city of Cleveland police dispatcher. The dispatch resulted from a call by a motorist who related that he was calling from his car phone, he was following a vehicle which was being driven erratically, and the vehicle was driven into The Village, a Beachwood community. Reiley responded to the address provided by the informant, 6 Bordeaux Lane, within a minute of the call.

Reiley observed a Jeep parked in the driveway with one male occupant, the informant. He also saw a man in the garage which was attached to the residence. Reiley identified appellant as the man in the garage.

Reiley first spoke with the informant and learned that the informant followed appellant from downtown Cleveland through four vicinities in the Cleveland area. The informant also provided that appellant's trail included two or three near-miss accidents.

Reiley next approached appellant while he was still in the garage. Appellant appeared to be very unsteady, and was very red-faced. Reiley further described appellant as possessing slurred speech, glassy eyes, and a very strong odor of alcoholic beverages on his breath. Reiley never personally observed appellant driving his vehicle.

Appellant then spoke with Reiley. Appellant told the officer that the informant was out to get him, and that the informant's presence in his driveway upset him. Appellant then volunteered that he drove the red Blazer that was now in his garage from downtown. He also acknowledged that he consumed three beers at Moriarty's, a bar located downtown. According to Reiley, appellant freely volunteered all of this information when first approached by him.

Reiley then called for assistance and Sergeant O'Donnell arrived shortly thereafter. Field sobriety tests were performed with the results leading to appellant's arrest for driving while under the influence of alcohol. Appellant was read his rights and transported to the Beachwood Police Station where additional field sobriety tests were conducted. Appellant was moreover advised of his rights again in writing.

Once at the station, appellant agreed to take a breathalyzer test, but then refused to do so properly in two attempts. Appellant agreed at this point to provide a urine sample to Officer Curtiss, said sample being taken at 9:35 p.m.

Reiley was questioned by defense counsel as to his knowledge of how long the informant was present at appellant's residence before the officer's arrival. According to Reiley, the informant told him that he was present for about ten to twelve minutes before his arrival. He also informed Reiley that appellant was in

the garage for that period of time except for about forty-five seconds when appellant went inside the house.

Patrolman Roger Curtiss testified that he heard the informant's initial call on March 17, 1993 that he was following an erratic driver who had just pulled into The Village. After learning of appellant's arrest, Curtiss went to the police station to prepare for appellant's breathalyzer test.

Curtiss next testified that when appellant was brought to the station, he was first advised of his constitutional rights. He was also read a "BMV 2214 Notice of Refusal Form," which informed him that he was under arrest for driving under the influence of alcohol, he was going to be asked to take a breathalyzer test, and of the consequences ensuing from a refusal to take the test.

Curtiss furthermore instructed appellant numerous times on the procedure necessary to provide a sufficient sample of air for the test. Appellant nonetheless was unable to provide a sufficient amount of air in two attempts. Curtiss informed appellant that the unsuccessful attempts were considered a refusal, but then offered him the opportunity to provide a urine sample. The sample was provided at 9:35 p.m.

Appellant's sole assignment of error reads as follows [2]:

"I. The trial court erred when it denied a motion to suppress evidence obtained through a warrantless entry by police into a private home, and a warrantless arrest of the homeowner, for a potential misdemeanor traffic offense which no police officer observed and which was not committed in the presence of any police officer."

The city asserts that Officer Reiley justifiably approached appellant at his residence after receiving a tip from a motorist that appellant was drinking and then driving his vehicle erratically. Though the officer did not personally observe the alleged erratic driving, the city maintains that Officer Reiley's verification of appellant's vehicle and his subsequent determination that probable cause existed for appellant's arrest, warrants an affirmance of the trial court's denial of appellant's motion to suppress evidence. We agree.

This court must first determine whether Officer Reiley's initial "stop" of appellant was reasonable. As the Supreme Court of Ohio held in *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, " '[i]n determining whether the seizure and search were "unreasonable" our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in

---

**2.** Appellant appealed from the trial court's ruling on the motion to suppress and from the final judgment. Two case numbers were assigned to his appeals, App. Nos. 66337 and 66338. The cases were consolidated for record, briefing, hearing and disposition on November 16, 1993.

scope to the circumstances which justified the interference in the first place.' " *Id.* at 178, 524 N.E.2d at 491, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

■ The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has either occurred or is imminent. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The police officer, in justifying the particular intrusion, must point to specific and articulable facts warranting a man of reasonable caution in the belief that the officer's action was appropriate. *Id.* at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The propriety of an investigative stop in Ohio must be viewed in light of the totality of the circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; *Bobo; State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044.

The Supreme Court, in *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, reexamined the issue of whether an anonymous tip furnishes reasonable suspicion for a stop. The decision repeats the findings of *Illinois v. Gates* (1982), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, and redefines the parameters for a valid stop which is based upon an anonymous tip where certain information from the informant is verified. See, also, *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.

■ In the present case, the citizen-informant's tip was corroborated by sufficient details to serve as a basis for the police officer's investigatory stop. *White.* Officer Reiley responded to a dispatch generated by an identified informant who followed appellant from a downtown bar to his residence. The appellant was seen driving erratically to his residence by the informant. Officer Reiley was made aware of this information via the dispatch as well as the informant's statement that appellant consumed alcohol at the bar. When Reiley arrived at appellant's residence, the informant was there to identify appellant as the driver of the erratically driven vehicle. Officer Reiley, therefore, had a reasonable suspicion to make an investigatory stop. See *Beachwood v. Smoleny* (1991), 74 Ohio App.3d 756, 600 N.E.2d 711; *Granville v. Huber* (Nov. 10, 1993), Licking App. No. 93–CA–50, unreported, 1993 WL 471448; *Fairfield v. Grant-Reed* (May 10, 1993), Butler App. No. CA92–11–216, unreported, 1993 WL 147528; State v. Jones (Jan. 28, 1993), Stark App. No. CA–9055, unreported, 1993 WL 35646; *Univ. Hts. v. Fiktus* (Dec. 12, 1991), Cuyahoga App. No. 61837, unreported, 1991 WL 264578. Compare *State v. Campbell* (1990), 68 Ohio App.3d 688, 589 N.E.2d 452 (trial court unable to conclude that stop was justified as an investigatory stop where officer stopped driver of truck upon information that male driver was consuming wine at drive-thru window, but record failed to

establish that this information was conveyed from other officer at restaurant or a sufficiently corroborated tip); *N. Olmsted v. Gabel* (Sept. 2, 1993), Cuyahoga App. No. 63736, unreported, 1993 WL 335429 (no basis to conclude that sufficient and articulable facts warranted investigatory stop where no demonstration that responding officer received full extent of informant's information, and the officer, therefore, stopped vehicle based only upon a report of its being "suspicious").

■ Once reasonable suspicion is found for an investigatory stop, an officer must then have probable cause to arrest a suspect without a warrant. In *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145, the court defined the test for probable cause for arrest to be, "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

This test has been applied to warrantless arrests for operating under the influence of alcohol. *State v. Finch* (1985), 24 Ohio App.3d 38, 24 OBR 61, 492 N.E.2d 1254.

■ In the present case, according to Officer Reiley's testimony, the appellant appeared visibly intoxicated insofar as he was unsteady, smelled of alcohol, his speech was slurred and his eyes glassy. Appellant admitted that he consumed alcohol that evening and that he drove the vehicle which sat in his garage. Field sobriety tests corroborated Officer Reiley's suspicion. These observations when combined with the information related by the informant afforded Officer Reiley with probable cause to reasonably believe that a crime was committed and that it was committed by appellant. Under these circumstances, the trial court properly denied appellant's motion to suppress evidence, as appellant's arrest was supported by probable cause. See *State v. Wireman* (1993), 86 Ohio App.3d 451, 621 N.E.2d 542; *Bucyrus v. Williams* (1988), 46 Ohio App.3d 43, 545 N.E.2d 1298; *State v. Allen* (1981), 2 Ohio App.3d 441, 2 OBR 536, 442 N.E.2d 784.

■ We disagree with appellant's assertion that *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732, and *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226, are dispositive of this case. These two cases stand for the proposition that when the government's interest is only to arrest for a minor offense, the presumption of unreasonableness that attaches to a warrantless arrest in a private home is difficult to rebut. *Welsh,* 466 U.S. at 750–751, 104 S.Ct. at 2098, 80 L.Ed.2d at 743–744; *Theiss,* 28 Ohio App.3d at 3, 28 OBR at 11, 501 N.E.2d at 1228.

In *Welsh,* the Supreme Court noted that it expressly limited warrantless arrests upon a showing of probable cause to felony arrests in *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. *Welsh,* 466 U.S. at 750, 104

S.Ct. at 2097, 80 L.Ed.2d at 743, fn. 11. However, it then explicitly stated that "[b]ecause we conclude that, *in the circumstances presented by this case*, there were no exigent circumstances sufficient to justify a warrantless home entry, *we have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses.*" (Emphasis added.) *Id.*

The facts of *Welsh* which led the Supreme Court to refuse to validate a warrantless arrest are not present in the case now before us. Welsh was arrested for driving while intoxicated under Section 346.63(1) of the Wisconsin Vehicle Code. *Id.*, 466 U.S. at 743, 104 S.Ct. at 2094, 80 L.Ed.2d at 739. The statute categorized a first offense as a civil violation which allowed for a monetary forfeiture of no more than $300. *Id.* at 746, 104 S.Ct. at 2095–2096, 80 L.Ed.2d at 741. Welsh was thus not susceptible to imprisonment. *Id.* at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 764.

In *Theiss,* the police sought to arrest an individual for disorderly conduct when the officers allegedly broke into the individual's residence. *Theiss,* 28 Ohio App.3d at 2, 28 OBR at 10, 501 N.E.2d at 1227. Disorderly conduct is a minor misdemeanor under R.C. 2917.11(E). A person convicted of the offense of disorderly conduct is likewise not susceptible to any term of imprisonment. R.C. 2929.21(A).

In Ohio, driving while under the influence of alcohol is characterized as a criminal offense. R.C. 4511.19(D). A person found to have violated R.C. 4511.19, or a municipal ordinance relating to the operation of a vehicle while under the influence of alcohol, shall be sentenced to a minimum term of imprisonment of three consecutive days when he or she has not been convicted of violating any section of R.C. 4511.19 within five years of the offense. R.C. 4511.99(A)(1). On the other hand, the trial court may also sentence an offender to a longer term of imprisonment pursuant to R.C. 2929.21. *Id.* It is thus apparent that the statutory scheme in Ohio is vastly different from that of Wisconsin in *Welsh* with regard to the offense of driving while under the influence of alcohol. It is also apparent that the state of Ohio views driving while under the influence of alcohol offenses more critically than disorderly conduct offenses. We, therefore, do not accept *Welsh* or *Theiss* as controlling our decision that Officer Reiley properly arrested appellant at his home for violating C.O. 434.01(A) following an informant's tip that appellant was driving erratically, the informant's identification of appellant upon a responding officer's arrival, the officer's observations of appellant's condition, and the appellant's admissions that he was drinking and driving. Compare *Blanchester v. Hester* (1992), 81 Ohio App.3d 815, 612 N.E.2d 412 (a minor traffic offense such as failure to yield cannot justify a warrantless arrest in the home).

■ Appellant further argues that his arrest violated R.C. 2935.03(A). This statute permits warrantless arrests where a person is "found violating" a law or ordinance. However, the Supreme Court of Ohio extended the circumstances which would satisfy R.C. 2935.03(A) in *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742. The court in *Oregon* was presented with two factual patterns with arresting officers in each case arriving at the scene of an accident and finding evidence of the driver's intoxication. *Id.* at 271–272, 61 O.O.2d at 496–497, 291 N.E.2d at 742–743. In both situations, the driver admitted driving at the time of the accident. *Id.* The court held:

"After viewing the scene of the accident and hearing appellants' admissions on a first-hand basis, the officers *could reasonably conclude* that each had been operating his vehicle shortly before the officers arrived. Coupled with the fact that appellants were obviously under the influence, the officers properly found each to have been violating an ordinance of the respective municipal corporations prohibiting driving while under the influence of alcohol." (Emphasis added.) *Id.* at 274, 61 O.O.2d at 497, 291 N.E.2d at 744.

In *Oregon*, the court premised its decision on the following factors. First, chronology is important in driving under the influence of alcohol cases. There must be a relationship between the time of the alcohol consumption and the time of vehicle operation. Second, each of these cases must be decided on an individual basis. Third, the evidence must show that the accused was under the influence of the alcohol at the time of operation. *Id.* at 273, 61 O.O.2d at 497, 291 N.E.2d at 743, citing *Mentor v. Giordano* (1967), 9 Ohio St.2d 140, 38 O.O.2d 366, 224 N.E.2d 343.

Herein, Officer Reiley could reasonably conclude, and did, that appellant was operating his vehicle while under the influence of alcohol just prior to his arrest for violating C.O. 434.01(A). Appellant admitted as such when questioned by the officer prior to his arrest. Based upon the record, it is our determination that appellant's arrest did not violate R.C. 2935.03. See *Williams; Xenia v. Manker* (1984), 18 Ohio App.3d 9, 18 OBR 33, 480 N.E.2d 94; *Allen.*

■ Appellant's final argument is that his statement that he was drinking and driving should have been suppressed because it was provided to Officer Reiley prior to his arrest, but before he was given a *Miranda* warning. Appellant submits that *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317, stands for the proposition that persons suspected of a traffic violation must be given *Miranda* warnings before questioning.

A reading of *Berkemer* fails to support appellant's overbroad interpretation. The court in *Berkemer* held that "a person subjected to *custodial interrogation* is entitled to the benefit of the procedural safeguards enunciated in *Miranda*,

regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." (Emphasis added.) *Id.*, 468 U.S. at 434, 104 S.Ct. at 3147, 82 L.Ed.2d at 331. The court then proceeded to find that the respondent was "in custody" at the time of his admissions which were given before he was advised of his *Miranda* rights. *Id.* at 434–435, 104 S.Ct. at 3147, 82 L.Ed.2d at 331. Consequently, the respondent's admissions should not have been used against him. *Id.* Appellant herein fails to establish the applicability of *Berkemer* to the facts of this case.

In conclusion, the trial court properly denied appellant's motion to suppress. His assignment of error is accordingly overruled.

*Judgment affirmed.*

KRUPANSKY and DAVID T. MATIA, JJ., concur.