JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Brian J. Corrigan, suppressing evidence in a prosecution for driving while under the influence (DUI), R.C. 4511.19. Appellant, State of Ohio claims it was error to rule that when the Mayfield Heights police stopped appellee Kevin Rainey for questioning and investigation, such a stop was unreasonable and that evidence derived therefrom should be excluded. We agree and reverse.
From the record we glean the following: At 3:00 a.m. on December 7, 1998, it had been raining off and on and Mayfield Heights police officer Scott Johnston was monitoring events from his parked police car near the corner of Mayfield Road and Washington Boulevard. He saw a car, operated by a man wearing a baseball-type hat, pass him, drive into a gas station at that corner and disappear behind the station building. Because the station was closed, Johnston decided to investigate and drove his vehicle to the area. It took Johnston one minute and ten seconds to reach the area[1] and during that time the car and its occupant or occupants were out of his sight.
When Johnston reached the back of the building, he saw 21 year-old Kevin Rainey standing outside the car, wearing a baseball cap. He saw Rainey reach for the driver's side door as though about to get in the car, but then stop and walk away. Rainey's lawyer disputed this contention in his cross-examination of Johnston, and introduced the videotape from the camera in Johnston's police car which apparently[2]
showed Rainey in a different position relative to the vehicle. In any event Rainey walked away from the vehicle, leaving it parked behind the closed gas station at 3:00 a.m. with the keys in the ignition, the engine running, and the windshield wipers operating. Johnston believed Rainey's behavior was suspicious, although he did not suspect him of any specific criminal offense. Johnston testified that when he decided to investigate the car behind the gas station, he initially suspected vandalism or a possible smash and grab theft and was unsure whether his appearance had thwarted such a plan. Johnston followed Rainey, noticed the rear of Rainey's trousers were wet on the right side, and stopped him as he was walking north on Washington Street.
When Johnston asked him why he was leaving his car, Rainey replied that it was not his car but that of a friend. He explained that his friend was driving him home, had stopped behind the gas station to put air in the tires, and had gone across the street to meet someone at Harry's Bar while Rainey put air in the tires. Rainey told Johnston that, instead of waiting for his friend, he decided to walk the rest of the way home which was, in fact, north of Mayfield Road on Washington Street, in the direction Rainey was walking.
Johnston ordered Rainey into the police car and drove back to the gas station. Johnston had neither noticed nor suspected that Rainey was intoxicated but he testified that he smelled a strong odor of alcohol when Rainey entered the police car. He also noticed that Rainey's eyes were glassy and bloodshot and stated that Rainey admitted he had been drinking. A license plate check verified that the car was not registered to Rainey, and a check of Rainey's driver's license revealed that it was suspended. After his return to the gas station, Johnston discovered that the sunroof of the abandoned car was open, that the driver's seat was wet on the right side, corresponding with the wet spot observed on Rainey's pants, and that the car's passenger seat was dry.
When backup officers arrived, Johnson asked them to find the owner of the car at Harry's Bar or at Rainey's residence. Harry's Bar was closed and the record does not reveal whether the car's owner was found at Rainey's residence, nor whether the owner was contacted at any point. Johnston then put Rainey through a series of field sobriety tests and determined that he was intoxicated. Rainey refused a blood alcohol test and Johnston formally cited him for DUI and driving under suspension.
On February 3, 1999, Rainey was indicted for DUI, with the State also charging that he had been convicted of DUI three times within the two years preceding the charged offense. Rainey moved to suppress, inter alia, Johnston's testimony concerning his observations of Rainey, the results of the field sobriety tests, and any statements he made while detained by the police. At the suppression hearing, Johnston testified as noted above and was the only witness.
Rainey argued that it was unreasonable for Johnston to stop him and put him in the police car because, until that time, there was no probable cause or reasonable suspicion that Rainey was involved in criminal activity. The trial judge agreed, stating that it wasn't until he [the police officer] actually had the defendant in his car that he actually smelled the alcohol on his breath. The judge also stated that he might reach a different result if the charge was vandalism, trespass, or an attempted theft at the gas station, but that he could not find adequate suspicion for the DUI charge based on the facts presented.
The State asserts the following as its sole assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION TO SUPPRESS.
When reviewing a warrantless search, this court will reverse a judge's findings of historical fact only upon clear error, but makes a de novo determination when applying those facts to the law, and whether a search was reasonable upon particular facts is a legal question. Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); State v. Harris (1994), 98 Ohio App.3d 543, 546. The State has the burden to prove the intrusion reasonable. City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889.
Rainey did not seriously contest Johnston's version of the facts, and it does not appear that the judge found that his testimony lacked credibility. The most serious questions raised centered on whether Johnson, in fact, saw Rainey reaching for the driver's side door as if to get in the car, and whether the wet spot on Rainey's pants corresponded to a wet spot in the car's driver's seat resulting from rain coming in through the open sunroof. For purposes of this decision, we can assume that the judge did not believe that Rainey was reaching for the driver's side door, and that the wet spot on his pants was not evidence that he was driving the car. These issues are irrelevant to our resolution of the case.
The propriety of a warrantless intrusion depends on the scope of the intrusion and the circumstances supporting it. A warrantless search or arrest must be supported by probable cause, and must satisfy some exception to the Fourth Amendment's warrant requirement. Beachwood v. Sims (1994), 98 Ohio App.3d 9, 15, 647 N.E.2d 821, 824-25. A police officer may, however, detain an individual for short periods of investigation and/or questioning upon something less than probable cause, if the officer has a reasonable suspicion, based on specific and articulable facts, that criminal behavior has either occurred or is imminent. Id. at 14, 647 N.E.2d at 824 (citing Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906). Reasonable suspicion justifying an investigatory stop may then lead to evidence supporting a warrantless arrest on probable cause. Sims, supra.
We first must determine the point at which Rainey was detained in any capacity because there is no need to justify Johnston's conduct until he has intruded on some protected area. In this case, Rainey was not seized, for Fourth Amendment purposes, until he was ordered into the police car and returned to the gas station. Johnson was not intruding on any protected interest when he drove to the back of the gas station to observe the car and investigate, and he was entitled to seek Rainey's consensual cooperation when he followed him to ask why he had left the car behind. The encounter became a protected seizure only when he ordered Rainey into the police car.
Rainey concedes that Johnston's initial detention of him was not an arrest requiring probable cause, but a more limited Terry investigation. The question, therefore, is whether Johnston had specific, articulable facts to support the detention. Rainey claims that Johnston had no reason to detain him because he gave a reasonable explanation for his actions and Johnston had no suspicion of criminal conduct. We disagree.
At 3:00 a.m. Rainey left an automobile behind a closed gas station, unattended, with its engine running, and Johnston had seen a person driving that car wearing a hat like Rainey's. It is a violation of Ohio law to leave a vehicle unattended with the engine running and the keys inside. R.C. 4511.661. Although a suspected commission of this minor misdemeanor would not warrant an invasive Terry intrusion,[3] it does justify Johnston's conduct under these circumstances.
He observed what appeared to be someone abandoning an automobile and leaving the engine running; Rainey told him the automobile belonged to a friend who had gone across the street to Harry's Bar to meet someone, but Johnston had seen no one else and one could expect a tavern to be lawfully closed at 3:00 a.m. Johnston could reasonably detain Rainey for a few minutes to see if someone else appeared to claim ownership or take valid possession of the car.
It is apparent from the record that Johnston was unaware that leaving the car unattended, was a violation of R.C. 4511.661, but found the behavior suspicious for other reasons. He stated that he suspected the occupant of the car might commit a crime of vandalism or theft at the gas station, although he had discovered no evidence of this and had not closely investigated the scene for such evidence. Based on Rainey's odd behavior and his bizarre explanations that were inconsistent with what Johnston had seen, he could detain Rainey and return him to the gas station until he could examine the scene more closely for evidence of an attempted break-in, theft, or vandalism. In either case, Johnston's initial detention of Rainey was for the limited purpose of ascertaining whether some crime had been committed, and Johnston had reasonable suspicion to make that investigation.
Having decided that Johnston reasonably ordered Rainey into his police car for transport, the remaining events reasonably follow. Once in the police car, the odor of alcohol combined with Rainey's glassy, bloodshot eyes, and his admission that he had been drinking, sufficiently aroused Johnston's suspicion that Rainey was intoxicated. That suspicion combined with the facts that Rainey was seen in the immediate vicinity of the car wearing a baseball cap, the driver of the car was wearing a baseball cap, the absence of any other person in the vicinity of the car, and Rainey's attempt to dissociate himself from the car, resulted in Johnston's reasonable suspicion that Rainey had been driving while intoxicated, and thus justified his administration of field sobriety tests. State v. Bycznski (1994), 98 Ohio App.3d 625, 630-31,649 N.E.2d 285, 288-89; Columbus v. Anderson (1991), 74 Ohio App.3d 768,770, 600 N.E.2d 712, 714.
Rainey misstates the focus of our inquiry when he complains that Johnston had not actually seen him driving the car, and, therefore, could not be sure that someone else had been driving and abandoned it because, during that one minute ten second interval when the car was out of Johnson's sight, the actual driver could escape by walking through an empty lot behind the gas station, between houses, and come out on a parallel street.[4] While Rainey might be correct and ultimately might prevail on such a theory at trial, the issue in the suppression hearing was not whether Johnston could prove that Rainey was driving the car while intoxicated, but whether he had a reasonable suspicion to stop Rainey for investigation, and whether that suspicion ultimately led Johnston to lawfully obtain probable cause to arrest Rainey for DUI. Johnston lawfully discovered enough evidence to arrest Rainey for DUI, and whether enough evidence exists to convict Rainey is a question we need not decide here.
As already noted, Johnston had a reasonable suspicion of criminal activity sufficient to stop Rainey for questioning and temporarily detain him while investigating the scene at the gas station. Once his investigation was justified, it makes no difference that Johnston discovered evidence of a crime he did not initially suspect. See, e.g., Anderson, supra (officer smelled alcohol on defendant after initially stopping him for speeding violation). Because Rainey's original seizure was within constitutional bounds, the evidence obtained during the seizure also was lawful. That evidence supplied the reasonable suspicion necessary to do further investigation, and ultimately the probable cause to arrest Rainey for DUI. We find the State's assignment of error well taken.
It is ordered that the appellant recover from appellee its costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ ANNE L. KILBANE JUDGE
JOHN T. PATTON, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.
[1] This time was marked with precision because Johnston's car was equipped with a camera and videocassette recorder, which also timed the events.
[2] This Court was not provided with the videotape, but only the transcript of testimony describing it.
[3] Nor should our opinion here be read as an invitation to issue citations or conduct Terry investigations of any individual found leaving keys in a vehicle or an engine running for a short period of time. The circumstances described here are extraordinary, as Rainey's apparent abandonment of the vehicle at 3:00 a.m. with the engine running seemed utterly irrational.
[4] We note, however, that Rainey did not tell Johnston that the driver had run off; he stated that the driver had gone to a nearby bar to meet someone.