JOURNAL ENTRY AND OPINION
This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1.
Plaintiff-appellant appeals the trial court's denial of his motion to suppress his traffic stop.
Appellant Michael Surovey (defendant) was at the Pelicano's Pizza shop in Rocky River where several people noticed that he appeared to be staggering and slurring his words. An unidentified female alerted Scott Totten, owner of a bakery store in the same plaza, of defendant's condition. Totten walked to the pizza shop to observe defendant himself. Totten too noticed that defendant was having trouble standing and walking and had difficulty handing the pizza to his young son. Defendant and his son returned to his van and prepared to back out of the parking space. Because Totten suspected that defendant was under the influence of alcohol, Totten instructed an employee of the pizza shop, Mary, to phone the police from the phone behind the counter. Mary also had seen that defendant "staggered out to the car and he had a hard time getting into his van." Mary relayed to the police the style and color of defendant's car. She also relayed information given to her by Totten: the car's license number and the fact that defendant had difficulty navigating the car out of the parking spot and that when he pulled out of the parking lot he nearly hit a white Dodge Colt Vista. The police knew Mary's business location when she made the telephone call.
The Rocky River Police Department dispatch notified Officer Selong of the suspected drunk driver. With the information provided by the witness to dispatch, Officer Selong located defendant and pulled him over. The officer explained, "I didn't have the opportunity to do any driving on it [to observe for irregular operation], it was almost out of our City at the time." (Tr. 20.) When the officer stopped him, defendant had difficulty lowering the car window and finding his license in his wallet. He failed the roadside sobriety tests and was arrested and taken to the police department where his blood alcohol was measured at .260 on a breath test.
Defendant was convicted of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1). The charges of operating a vehicle with a blood alcohol in excess of the legal limit in violation of R.C.4511.19(A)(3) and child endangering were dropped in return for his no contest plea to the first charge.
Prior to his plea, defendant filed a motion to suppress his traffic stop because the policeman who stopped him did not observe any driving violations. Defendant claims that because the police did not have reliable information to justify the stop, all the evidence acquired after the stop should have been excluded. He argues that the police did not obtain their "tip" from a first-hand informant because it was Mary from the pizza shop who actually spoke with the police and some of the information she relayed, specifically the license number, was observed by Totten from the bakery shop, not her.
For his sole assignment of error, defendant states,
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE STOP OF DEFENDANT/APPELLANT WHERE THE POLICE OFFICER OBSERVED NO ERATIC [SIC] DRIVING, BUT, [SIC] BASED HIS STOP ON AN ANONYMOUS TELEPHONE TIP HE RECEIVED VIA HIS DISPATCHER.
Defendant argues that the police did not have "a reasonable suspicion supported by articulable facts"[1] when they pulled him over. He claims that the police dispatcher "knew nothing of who had called aside from the fact that it was from Pelicano's Pizza shop." Appellant's brief. Because of the alleged anonymity of the caller, defendant claims that there "was no indicia of reliability from the caller." Id.
In support, appellant cites Florida v. J. L. (2000), 120 S.Ct. 1375, a case involving a totally anonymous tip "from a call made from an unknown location by an unknown caller." Id. at 1377. In the case at bar, however, the officer testified that he "received a dispatch call from Officer Coleman, stating that an employee at Pelicano's Pizza reported a possible DUI leaving the parking lot." (Tr. 14.) And the arresting officer was aware the citizen informant was a woman.
The question then is "whether the information provided by the informant was adequate to consider [her] identified."[2] Maumee v. Weisner
(1999), 87 Ohio St.3d 295, 301. "Courts have been lenient in their assessment of the type and amount of information needed to identify a particular informant. Many courts have found, for instance, that identification of the informant's occupation alone is sufficient" to be considered reliable enough to justify a stop. Id. In United States v.Pasquarille (C.A.6, 1994), 20 F.3d 682, 689, the court concluded that, although the informant's name was unknown, information that he was a transporter of prisoners was enough to remove him from the anonymous informant category. Likewise, in Edwards v. Cabrera (C.A.7, 1995),58 F.3d 290, 294, the court was satisfied with the knowledge that the informant was a bus driver whose identity was ascertainable. See, also,State v. Loop (Mar. 14, 1994), Scioto App. No. 93CA2153, unreported.
In the case at bar, the officer knew the gender of the tipster, her employer, and also her location, so she "would have been unlikely to offer a false report because of the consequences." Maumee at 302. Also significant is the timing: the tip arose from circumstances as they were occurring. The informant immediately called the police as she personally observed the defendant staggering out of her pizza shop and having difficulty getting into his van. The officer testified that the call "reported a possible DUI leaving the parking lot."[3] This immediacy lends further credibility * * *." Id. We conclude that this information is sufficient to remove the tipster from the anonymous informant category. The principles enunciated in the Florida case, therefore, are not applicable to the case at bar.
Moreover, "a personal observation by an informant is due greater reliability than a secondhand description." Id. As this court has previously explained,
 A police officer necessarily relies on information he receives over the police radio, and it is his duty to act when he receives that information. * * * Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.
Brecksville v. Bayless (Apr. 3, 1997), Cuyahoga App. No. 70973, unreported, 1997 Ohio App. LEXIS 1305, at *8-9. We find that the telephone tip was given by a sufficiently identified citizen, with firsthand knowledge, and, therefore, reliable.
Appellant next argues that the police officer's stop, absent his own observation of driving violations, was improper. This court has already described the criteria to be applied to this claim:
 The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has either occurred or is imminent. * * * The police officer, in justifying the particular intrusion, must point to specific and articulable facts warranting a man of reasonable caution in the belief that the officer's action was appropriate. * * * The propriety of an investigative stop in Ohio must be viewed in light of the totality of the circumstances. (Citations omitted.)
Beachwood v. Sims (1994), 98 Ohio App.3d 9, 13-14.
The Supreme Court of Ohio has stated that "at a suppression hearing, the state bears the burden of proving that a warrantless search or seizure meets the Fourth Amendment standards of reasonableness." Maumee
at 297. However, when an investigative stop is made in sole reliance upon a police dispatch, different considerations apply. Id. The police officer making the stop need not have personal knowledge of the information motivating the stop. Rather, "where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Id. at 298.
In the case at bar, defendant was stopped by the police within moments of a call from an informant who personally observed and described the criminal behavior and who accurately described the offender and his vehicle, as well as his route of travel. The suspected criminal activity in this case is driving under the influence of alcohol. At the suppression hearing, Officer Selong specified the facts precipitating the dispatch: "I received a dispatch call from Officer Coleman, stating that an employee at Pelicano's Pizza reported a possible DUI leaving the parking lot." Tr. at 14. When asked whether he saw defendant, the officer stated that he saw "a white van going by. Although he didn't note anything about its operation, * * * I was able to verify that this was the van that we were looking for by the lisence [sic] plate." Tr. at 15.
 Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. * * * The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered highly relevant in determining the value of [the informant's] report are the informant's veracity, reliability, and basis of knowledge.
Maumee v. Weisner at 299.
As we stated previously, the informant's basis of knowledge was firsthand observation of defendant's condition. The police dispatcher knew her location and employer at the time she made her complaint, and this knowledge was imputed to the officer making the stop. Maumee at 298. Her reliability was enhanced by the fact that she identified her employer, and her veracity was enhanced by the accurate description of the van, its location, and its direction.
Under the totality of the circumstances, the officers had a sufficient reasonable suspicion to justify stopping defendant. The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., CONCURS; TERRENCE O'DONNELL, J., CONCURS INJUDGMENT ONLY.
[1] We do not cite any page numbers from appellant's brief because appellant failed to number the pages.
[2] The Ohio Supreme Court in Maumee also clarified that the admissibility of evidence turns "upon `whether the officers who issued
the flyer' or dispatch possessed reasonable suspicion to make the stop. (Emphasis sic.)" Maumee at 297, citing United States v. Robinson (C.A. 9, 1976), 536 F.2d 1298, 1299. The City did not introduce the dispatch tape or bring as a witness the dispatcher or the person who spoke to the dispatcher. Moreover, at a few key sections of the transcript of the suppression hearing the testimony of the arresting officer is "indiscernible." However, the court still had sufficient testimony from the arresting officer as to what the dispatcher told him.
[3] Indeed, less than an hour after she called in her tip, the employee signed a police report.