[Cite as *State v. Boiani*, 2013-Ohio-1342.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98314

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAVID BOIANI

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-539352

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 4, 2013

**ATTORNEY FOR APPELLANT**

Christine Agnello Russo
11005 Pearl Road
Suite 4
Strongsville, Ohio   44136


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Melissa Riley
          Edward Fadel
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant David Boiani ("Boiani") appeals his felony DUI conviction and the denial of his motion to suppress. We find no merit to the appeal and affirm.

{¶2} Boiani was charged with two counts of DUI pursuant to R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h). He pleaded not guilty and filed a motion to suppress evidence obtained following a traffic stop in Strongsville.

{¶3} At a suppression hearing, several Strongsville police officers testified about the traffic stop and Boiani's subsequent arrest. Lieutenant Anthony Zacharyasz ("Zacharyasz") testified that police received a call reporting a possible DUI. The caller reported that the intoxicated driver was leaving Molly McGhee's, a local bar, and was heading southbound on Prospect Road. Zacharyasz, who met with the caller in person in the parking lot of Molly McGhee's, testified that although the caller was also intoxicated, he was able to provide positive identification of the vehicle that matched the records in the LEADS database. He described the vehicle as a white, four-door Cadillac and provided an accurate license plate number. He also told police that the driver was so drunk "he almost couldn't walk."

{¶4} Officer Jacob Knipp ("Knipp") testified that he responded to the area and observed a car matching the description on Lunn Road. He followed the car, which turned onto Ranchwood and then into the driveway of a residence. He admitted that

although he did not observe the driver commit any traffic violations, he activated his lights to investigate the alleged DUI.

{¶5} He approached Boiani, who was still seated in the car, and asked for his driver's license and proof of insurance.   While he was speaking with him, Knipp noticed that Boiani slurred his speech, had glassy eyes, and had a strong smell of alcohol.   Based on these observations, he asked Boiani to get out of the car to perform field sobriety tests.   When Boiani stepped out of the car, he was unsteady on his feet and refused to perform the tests.   Knipp arrested him for DUI.   At the police station, Boiani was advised of his *Miranda* rights.

{¶6} Based on this evidence, the court denied Boiani's motion to suppress. Boiani subsequently pleaded no contest, and the court imposed a six-month prison sentence. The sentence was stayed pending appeal.   Boiani now appeals and raises seven assignments of error.

## Motion to Suppress

{¶7} In his first assignment of error, Boiani argues the trial court erred in denying his motion to suppress because police did not have reasonable suspicion to stop and detain him.   In the second assignment of error, he argues the trial court erred in denying his motion to suppress evidence obtained during the traffic stop and subsequent arrest. We discuss these assigned errors together because they are closely related.

{¶8} Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988. A reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *Burnside* at ¶ 8. However, once an appellate court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *Burnside* at ¶ 9. In other words, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Id.*

{¶9} Before initiating a stop, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Determination of whether reasonable suspicion exists in any given case requires review of the totality of the surrounding facts and circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. Those circumstances must be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Andrews,* 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶10} The traffic stop in this case was based solely on an informant's tip that Boiani was driving under the influence of alcohol. In *Maumee v. Weisner*, 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507, the Ohio Supreme Court held that a telephone tip

can, standing alone, create reasonable suspicion justifying an investigative stop if the tip has sufficient indicia of reliability.  *Id.*, paragraph one of the syllabus.  Under these circumstances, the determination of reasonable suspicion is limited to an examination of the weight and reliability of the tip.  *Id.*  The focus is on "whether the tip itself has sufficient indicia of reliability to justify the investigative stop."  *Id.*  The most important factors in determining the reliability of an informant's report are "the informant's veracity, reliability, and basis of knowledge."  *Id.*, citing *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

{¶11} In assessing the reliability of the informant's tip, the *Weisner* court stated that it is useful to categorize informants according to their typical characteristics.  *Id.* at 300.  It has generally been accepted that there are three classes of informants: the anonymous informant, the known informant, and the identified citizen informant.  *Id.* The *Weisner* court explained:

> While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability.  The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration.  *Alabama v. White*, 496 U.S. at 329, 110 S.Ct. at 2415, 110 L.Ed.2d at 308.  The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "If an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates*, 462 U.S. [213,] 233-234, 103 S.Ct. [2317,] 2329-2330, 76 L.Ed.2d [527,] 545.

*Id.* Finally, the court held that where the informant provides identifying information, including his name and phone number, and the informant remained on the scene, making face-to-face contact a possibility, police have sufficient information to classify that informant as an identified citizen. *Id.*

{¶12} In the instant case, the Strongsville police met with the informant in person to verify his report before making the traffic stop. At the suppression hearing, Zacharyasz testified that although the informant was intoxicated, he provided an accurate description of the car Boiani was driving, its license plate number, and the car's general location. The name the informant provided to dispatch was consistent with the identification he provided to Zacharyasz in person. Under these circumstances, the informant was an identified informant with information reliable enough to warrant the stop.

{¶13} Once Knipp made the stop and began speaking with Boiani, he noticed that Boiani was slurring his speech and his eyes were glassy. There was also a strong smell of alcohol. Based on these observations, Knipp had reasonable suspicion to investigate further and asked Boiani to step out of the car. When Boiani stepped out of the car, he was unsteady on his feet and refused to perform field sobriety tests. By this time, Knipp had probable cause to arrest Boiani for DUI. Because Knipp had reasonable suspicion for the stop and probable cause to arrest Boiani, the trial court properly denied his motion to suppress.

{¶14} Accordingly, the first and second assignments of error are overruled.

### *Miranda* Warnings

{¶15} In the third assignment of error, Boiani argues the trial court erred in denying his motion to suppress statements he made to police during the investigatory stop. He contends that because the police car blocked the driveway where he parked, he was effectively under arrest and should have been advised of his *Miranda* rights before the police questioned him.

{¶16} Prior to a custodial interrogation, the accused must be apprised of his or her right against self-incrimination and right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* defines "custodial interrogations" as any "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. A traffic stop alone does not render the person "in custody" within the meaning of *Miranda*. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 13, citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). However, if that person "thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id*.

{¶17} In the instant case, we need not determine whether Boiani was "in custody" for purposes of *Miranda* because Boiani failed to identify what statements he allegedly made to police that he wanted suppressed. Nor does he explain how such statements

would have prejudiced him in the proceedings below. Accordingly, we summarily reject this unsupported claim. *See* App.R. 16(A)(7); App.R. 12(A)(2).

{¶18} Moreover, even if any and all of Boiani's statements were obtained in violation of *Miranda*, the court's failure to suppress any statements would not have changed the outcome of the proceedings. As previously explained, police obtained a report from an identified informant that Boiani was driving while he was intoxicated. Knipp smelled a strong odor of alcohol emanating through Boiani's car window and observed that Boiani's eyes were glassy. He also observed that Boiani was unsteady on his feet. Results of a breathalyzer test confirmed that his blood alcohol content was well above the legal limit. Under these circumstances, even if all of Boiani's statements had been suppressed, it would not have changed the outcome of the proceedings. Therefore, any error in denying the motion to suppress Boiani's statements was harmless.

{¶19} The third assignment of error is overruled.

### Breath Alcohol Test

{¶20} In the fourth assignment of error, Boiani argues the trial court should have suppressed the results of his breath alcohol test because the officer who performed the test was not called to testify at the suppression hearing.

{¶21} In support of this argument, Boiani relies on *Bullcoming v. New Mexico*, U.S. __, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In *Bullcoming*, the defendant was convicted of driving while intoxicated. His conviction was based on a laboratory report of his blood alcohol level. At the trial, an analyst from the laboratory where the test was

performed testified concerning the testing device and the laboratory's testing procedures. However, the analyst who testified at trial did not perform or observe the actual test performed in the case. The defendant argued that the absence of the forensic analyst who prepared the report violated his Sixth Amendment right of confrontation. The United States Supreme Court agreed, holding that the admission of the report violated the defendant's right to confront the analyst who prepared the report because the substitute analyst who testified at trial did not perform or observe the test and therefore did not satisfy the right of confrontation.

{¶22} The instant case is distinguishable from *Bullcoming* in that Officer Knipp was present and observed the officer perform the breath test. Officer Knipp testified that the officer who performed the test followed the procedures for proper operation of the Intoxilyzer 5000 and followed all applicable guidelines. Because Officer Knipp observed the actual test and was available for confrontation, there was no Sixth Amendment violation.

{¶23} Therefore, the fourth assignment of error is overruled.

### Admission of State Exhibit Nos. 4 and 5

{¶24} In the fifth assignment of error, Boiani argues the trial court should not have admitted state's exhibit Nos. 4 and 5 into evidence. Both exhibits relate to the breath test performed on the Intoxilyzer 5000.

{¶25} Boiani failed to object to the admission of these exhibits at the suppression hearing. Therefore, he waived all but plain error. *State v. Long*, 53 Ohio St.2d 91, 372

N.E.2d 804 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph one of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶26} Boiani contends the exhibits that relate to the breath test were inadmissible under *Bullcoming*. However, as previously explained, because Officer Knipp was present when the test was performed and was available for cross-examination, there was no constitutional violation and the evidence of the breath test was admissible. Plain error cannot exist in the absence of error. Accordingly, we overrule the fifth assignment of error.

### Admission of State Exhibit Nos. 9 and 11

{¶27} In the sixth assignment of error, Boiani argues the trial court erred in admitting state's exhibit Nos. 9 and 11. He contends these exhibits, both of which are documents, were admitted even though neither the author of the records nor the records custodian were present to authenticate them. We find these claims unsupported by the record.

{¶28} Generally, documents constitute inadmissible hearsay unless the author of the document is available to testify about it or the document qualifies as an exception to the hearsay rule. Evid.R. 803; *State v. Cassano*, 8th Dist. No. 97228, 2012-Ohio-4047, ¶ 21-22. As applicable here, the business records exception excepts business records

from exclusion at trial "if they are made in the course of a regularly conducted business activity because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries." *Id.*, citing *Weis v. Weis*, 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947).

{¶29} To qualify for the business-records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted activity, (2) a person with knowledge of the act, event, or condition recorded must have made the record, (3) it must have been recorded at or near the time of the act, event, or condition, and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶30} State exhibit No. 9 is a form police officers complete when they calibrate the department's Intoxilyzer 5000. State exhibit No. 11 is a document prepared by the Ohio Department of Health inspector that includes a checklist of things the inspector looks for when he is present at the police station for inspection. At the close of the state's case, Boiani objected to these exhibits and the court withheld ruling on them. Neither of these exhibits were admitted into evidence. Therefore, this assigned error is moot.

{¶31} Nevertheless, we note that Officer Albert Heyse ("Heyse") identified State exhibit No. 9 at the suppression hearing and testified that it is a form he completed himself when he checked the calibrations of the Intoxilyzer 5000. As the author of the

report, he was qualified to testify about it. Heyse also testified that he is responsible for maintaining all documents pertaining to the Intoxilyzer 5000. He is, therefore, the custodian of records for that machine and could testify about the documents.

{¶32} Accordingly, we overruled the sixth assignment of error.

## Findings of Fact and Conclusions of Law

{¶33} In the seventh assignment of error, Boiani argues the trial court failed to correctly apply the law to his findings of fact and conclusions of law. He contends that because Officer Knipp admitted that he did not observe any traffic violations prior to the stop, he lacked reasonable suspicion to warrant the traffic stop.

{¶34} However, as previously explained, the reasonable suspicion needed to warrant the traffic stop came from an identified citizen informant, who provided accurate information about Boiani's vehicle and location as well as accurate identification of himself. Under *Maumee v. Weisner*, 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507, this informant's tip provided reasonable suspicion to warrant the stop. During the investigatory stop, Knipp acquired probable cause to arrest Boiani. Therefore, the trial court correctly applied the applicable law to the facts of this case when it denied the motion to suppress.

{¶35} Accordingly, the seventh assignment of error is overruled.

{¶36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


EILEEN A. GALLAGHER, J., DISSENTING:

**{¶37}** I respectfully dissent from the majority opinion.

**{¶38}** At the hearing on the motion to suppress, Strongsville police officer Jacob Knipp ("Knipp") testified that on July 3, 2010, "we received a call about an intox driver." The dispatcher provided in the dispatch a license plate number and described the vehicle as a four-door Cadillac traveling southbound on Prospect Road in Strongsville, Ohio, from Molly McGhee's, a tavern. Knipp "found" the car on Lunn Road and made approach after the vehicle was driven into a driveway on Winding Trail. At no time did Knipp observe any moving violations. Knipp approached the vehicle and requested that the driver provide his license and proof of insurance, and he "advised him of the stop." Knipp testified that before he approached appellant's vehicle, he had no information but

for the possibility of a drunk driver, a license plate number, and a description of the vehicle but not of the driver. There was no information provided to Knipp of erratic driving and, while following the vehicle, he observed it make proper, signaled turns with no moving violations committed.

{¶39} Strongsville police Lieutenant Anthony Zacharyasz testified that on July 3, 2010, he responded to a complaint from a gentleman in the parking lot at Molly McGhee's tavern. The male was disheveled and appeared to be under the influence but provided to police his own identifying information as well as a description and Ohio registration of a vehicle that he reported was being operated by an intoxicated male. This complaining person was driven home by a Strongsville police officer, for his own safety, due to his intoxicated state.

{¶40} On cross-examination, the lieutenant related that the witness had also reported, as part of his 911 call, that he had been assaulted by someone, not the driver of the vehicle at issue, but Lieutenant Zacharyasz observed no evidence to bear out that report. The lieutenant also testified that the tipster is known to the Strongsville Police Department and to call them while he is intoxicated to report persons driving under the influence, but that he was unaware how many, *if any*, resulted in people being stopped.[1]

---

[1] The trial court issued findings of fact and conclusions of law, which I find to be flawed. The court found that Mr. Banks, the citizen tipster, had stated that the driver of the vehicle in question attempted to hit him with the vehicle. There is absolutely no evidence in the record to support this finding. The record reflects that Banks had reported to Strongsville police that he had been assaulted, but never stated that it was with a motor vehicle and, in fact, testimony was that in his allegation of assault, Banks reported that the assailant was *not* the driver of the

{¶41} Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a law enforcement officer must have a reasonable suspicion, based on specific and articulable facts, that a motorist is or has been engaged in criminal activity before stopping a vehicle. *State v. Bailey*, 8th Dist. No. 97330, 2012-Ohio-3356, ¶ 17, citing *State v. Davenport*, 8th Dist. No. 83487, 2004-Ohio-5020. An officer is justified in making an investigative stop if the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, which includes the violation of a traffic law. *Id*. Determination of whether reasonable suspicion exists in any given case requires review of the totality of the surrounding facts and circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. Those circumstances must be viewed through the eyes of the reasonable and prudent police officer on the scene, who must react to events as they unfold. *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶42} The majority correctly points out that pursuant to *Maumee v. Weisner*, 87 Ohio St.3d 295, 296, 1999-Ohio-68, 720 N.E.2d 507, a telephone tip can, by itself, create reasonable suspicion justifying an investigative stop where the tip has sufficient indicia of reliability. I disagree with the majority's conclusion that the circumstances of this case established that the tip had sufficient indicia of reliability to justify an investigative stop.

{¶43} This court has previously explained that when an investigative stop is made in sole reliance upon a police dispatch, the police officer making the stop need not have

white Cadillac.

personal knowledge of the information motivating the stop. Rather, where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. *State v. Greer*, 8th Dist. No. 92011, 2009-Ohio-5351, ¶ 20, citing *Rocky River v. Surovey*, 8th Dist. No. 79380, 2002-Ohio-572, citing, *Maumee*.

{¶44} As an initial matter, it is clear from the record that the tipster in this case was no stranger to the Strongsville Police Department. Lieutenant Zacharyasz testified that the tipster was known to the Strongsville Police to call, specifically from Molly McGhee's, with tips, including reports of driving under the influence, while he himself was intoxicated. Despite this reputation and history of making reports while intoxicated, Zacharyasz was unaware of any occasion when a tip from this individual had led to an arrest.

{¶45} Furthermore, upon arriving on the scene at Molly McGee's just before 3:00 a.m., Zacharyasz observed that the tipster was "definitely" intoxicated to the point that Zacharyasz felt it was unsafe to allow the tipster to attempt to *walk* home. It is unclear from the record if this highly relevant information regarding the reliability of the tipster's account was conveyed to the officers searching for the vehicle identified by the tipster.

{¶46} I find present circumstances highly distinguishable from other investigatory stops this court has upheld based solely on a tip. In *Beachwood v. Sims*, 98 Ohio App.3d 9, 647 N.E.2d 821 (8th Dist.1994), we upheld an investigatory stop based upon a tipster who followed an intoxicated driver to his home after alerting police. The tipster in *Sims*

was present at the scene when police arrived and recounted his information to the officers before they approached the defendant. In *Surovey*, we upheld an investigatory stop where the reporting tipster observed an intoxicated man staggering and struggling to enter his vehicle before driving away. The tipster provided police with her location and place of employment. Similarly, in *Cleveland v. Bradberry*, 8th Dist. No. 78838, 2001 Ohio App. LEXIS 3729 (Aug. 23, 2001), we found reasonable suspicion of an intoxicated driver based upon a neighbor's firsthand observations and report to police. None of these cases involved an intoxicated witness-tipster, much less an individual with a reputation for providing tips while intoxicated.

**{¶47}** "[A] tip which, standing alone, would lack sufficient indicia of reliability nevertheless may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work." *State v. Roubideaux*, 8th Dist. No. 92948, 2010-Ohio-73, ¶ 35, citing *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, the "simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop." *Id*.

**{¶48}** Even if I accepted the proposition that reasonable suspicion to support an investigatory stop could arise solely on the word of an intoxicated individual with a history such as that described above, Officer Knipp's actual observations of appellant's operation of his vehicle in conformity with the rules of the road failed to corroborate the tipster's report that appellant was so intoxicated he "almost couldn't walk."

**{¶49}** In light of above circumstances, I would find that the Strongsville Police lacked reasonable suspicion to justify an investigative stop of appellant's vehicle.