The STATE of Ohio

v.

HOLT█

 2002-Ohio-3345.]

Clermont County Municipal Court, Ohio.

No. 01 TRC 17448.

Decided March 4, 2002.

2

4

Mark Tekulve, Clermont County Assistant Prosecuting Attorney, for plaintiff.

Gary Rosenhoffer, for defendant.

---

VICTOR M. HADDAD, Judge.

{¶ 1} This matter came before the court for hearing on December 27, 2001, pursuant to defendant Danny R. Holt's motion to dismiss and/or suppress filed December 5, 2001. The defendant was present and represented by counsel, Gary Rosenhoffer. Assistant Prosecutor Mark Tekulve was present on behalf of the state of Ohio. Upon hearing testimony and oral argument on the motion, the court took the matter under advisement. The court herein renders the following decision.

## FINDINGS OF FACT

{¶ 2} The evidence indicates that Officer Chad Lutson, a police officer for Union Township, responded to the scene of an accident at 473 Roney Lane (Frisch's Restaurant parking lot) on September 16, 2001, at approximately 9:18 p.m. Upon arriving at Frisch's, Officer Lutson found Charlee Duderstadt, whose car had been hit by a driver who left the scene. Duderstadt, who worked at Frisch's, completed her shift around 8:00 p.m. that evening and stayed at Frisch's approximately one hour longer to talk to a friend. She then proceeded to leave, at which time her car was struck by the defendant's vehicle as he was leaving the restaurant's drive-through. The defendant immediately got out of his vehicle, which Duderstadt described as a purple or maroon-colored Jeep Cherokee, and approached her car. Duderstadt asked the defendant to call the police, but the defendant refused, stating that he did not want to get the police involved, and that he would take care of the damages. Duderstadt noticed the heavy odor of alcohol on the defendant, as well as the defendant's bloodshot eyes, and asked the defendant if he had been drinking. He replied that he had been drinking at the American Legion. The defendant eventually gave Duderstadt his name, address, telephone number, and insurance information. The defendant then asked whether Duderstadt was okay and left. Duderstadt called the police after the defendant left.

{¶ 3} While Officer Lutson was interviewing Duderstadt in the Frisch's parking lot, Officer Dave Combs of the Union Township Police Department stopped to see whether he could be of assistance. Once apprised of the situation, Officer Combs asked Officer Lutson if he could accompany him to the defendant's residence to investigate. Officer Lutson and Officer Combs left Frisch's in separate cars and proceeded to the defendant's home on Barbara Lane, located in Union Township, Clermont County.

{¶ 4} Upon arriving at the defendant's residence at approximately 10:30 p.m., the officers found a damaged vehicle in the driveway that matched the description that Duderstadt had given Officer Lutson. The officers knocked on the defendant's front door, but received no response. The officers looked in the defendant's picture window, but did not see anyone. Officer Lutson then went around the house while Officer Combs stayed at the front door. Officer Lutson noticed an uncovered window, and while looking inside, he observed the defendant lying on a bed. Officer Lutson made his presence known, identifying himself as a police officer, and asked the defendant to meet him at the front door. The defendant, wearing only his underwear, met the officers at the front door. The officers informed the defendant that they were investigating an accident that occurred on private property, and asked whether they could enter his residence to ask some questions. The defendant allowed the officers to enter his home and cooperated with the officers. According to Officer Lutson, the defendant's speech was slightly slurred, his eyes were glassy and bloodshot, and his gait was slow. Officer Combs noticed the odor of alcohol on the defendant and that his speech was slightly slurred. The defendant admitted that he had been driving his vehicle at the time of the accident, that he had consumed two beers at the American Legion, and that he had not consumed any more alcohol since the accident.

{¶ 5} While still in the defendant's living room, Officer Combs administered a series of field sobriety tests on the defendant, which included the horizontal gaze nystagmus ("HGN") test, the one-leg-stand test, and the walk-and-turn test. Officer Combs has experience that includes investigating more than one hundred DUIs.

{¶ 6} The defendant generally wears glasses, but was not wearing them at the time the field sobriety tests were conducted. Officer Combs verified that there were no problems with the defendant's pupils prior to conducting the HGN test and ascertained that the defendant was not on any medications. Officer Combs did not remember conducting a vertical gaze nystagmus test ("VGN") in conjunction with the HGN. On the HGN, Officer Combs found a total of five out of six clues to be present. On the one-leg-stand test, Officer Combs observed a total of three to four clues out of a possible four clues. On the walk-and-turn

test, the defendant exhibited five clues out of a possible eight clues. As a result of the field sobriety tests, the officers concluded that the defendant was under the influence, and Officer Lutson handcuffed him. The defendant now seeks to have his case dismissed, or alternatively seeks to have evidence of the field sobriety tests and inculpatory statements suppressed.

## CONCLUSIONS OF LAW

{¶ 7} The defendant first challenges the warrantless entry onto his property and the subsequent entry into his home. Above all else, the Fourth Amendment to the United States Constitution was intended to protect citizens from unreasonable searches and seizures within the privacy of their own homes. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court for E. Dist. of Michigan, S. Div.* (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752. Warrantless entries of residences are presumptively unreasonable, subject to only a few established, well-delineated exceptions. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The curtilage of a residence is also afforded protection under the Fourth Amendment. *State v. Karle* (2001), 144 Ohio App.3d 125, 759 N.E.2d 815. When a trespass by officers does not fall within the curtilage, there is no violation of a constitutional magnitude. *State v. Payne* (1995), 104 Ohio App.3d 364, 662 N.E.2d 60. The curtilage is defined as the area "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id., quoting *United States v. Dunn* (1987), 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326. A court should consider the following in determining whether a particular area falls within the curtilage: "[1] the proximity of the area claimed to be curtilage to the home; [2] whether the area is included within an enclosure surrounding the home; [3] the nature of the uses to which the area is put; and [4] the steps taken by the [home's] resident[s] to protect the area from observation by people passing by." Id. Using these criteria, the court in *State v. Carter* (Wadsworth M.C.1993), 63 Ohio Misc.2d 84, 619 N.E.2d 1228, found that the defendant's car, which was parked in his driveway, was not located within the curtilage. The court noted that the driveway was not within any sort of enclosure, and no measures had been taken to protect the driveway from the observation of people passing by.

{¶ 8} Police officers are privileged to enter onto the property of others in the proper exercise of their duties. *State v. Israel* (Sept. 26, 1997), Hamilton App. No. C–961006, 1997 WL 598396; *State v. Chapman* (1994), 97 Ohio App.3d 687, 647 N.E.2d 504; *State v. Huff* (June 10, 1999), Highland App. No. 98CA23, 1999 WL 402222. Unless a property owner has made express orders to the contrary regarding possible trespass, there is no rule that makes it illegal per se,

or a condemned violation of an individual's right to privacy, for anyone to openly and peaceably walk up to the front door of a man's "castle" with the honest intent to ask questions, whether the questioner be a pollster, salesman, or police officer. *United States v. Taylor* (C.A.4, 1996), 90 F.3d 903; *Davis v. United States* (C.A.9, 1964), 327 F.2d 301. In *United States v. Hammett* (C.A.9, 2001), 236 F.3d 1054, the court held that law enforcement officers did not violate the Fourth Amendment when, after receiving no response to their knocks at the front door, they circled around the house in a good-faith attempt to find another entrance and notify the occupants of their presence.

{¶ 9} In the case sub judice, the defendant claims that the officers illegally entered upon his premises. The court, however, notes that the officers were legitimately fulfilling their duties at the time that they entered onto the defendant's property, i.e., they were investigating the facts of an accident which had occurred approximately ninety minutes prior to their arrival at the defendant's home. The police were making a good-faith attempt to verify Duderstadt's account of the evening's events. When the officers did not receive any response to their knock at the front door, Officer Lutson was entitled to go around the defendant's home to see if, in fact, the defendant was home and amenable to questioning. Once Officer Lutson saw the defendant's uncovered window, he used this means to notify the defendant of his presence, not for the purposes of a search. The only evidence obtained as a result of the officer's initial entry onto the property, prior to entering the defendant's home, was evidence as to the description and condition of the vehicle parked in the defendant's driveway. For the reasons as set forth in *Carter*, supra, this court finds that defendant's vehicle was not within the curtilage. Applying the criteria set forth above, the court finds that the area surrounding the defendant's bedroom window is curtilage. The mere fact that Officer Lutson stood outside the defendant's bedroom window, however, does not warrant the suppression of evidence, since Officer Lutson's purpose for being there was legitimate, i.e., he was making a good-faith attempt to locate the defendant and did not obtain any evidence while standing there. Although the officers did not have permission to enter upon the defendant's property initially, no search was conducted within the curtilage and, therefore, no suppression of evidence is warranted from this initial intrusion.

{¶ 10} Next, the defendant argues that the officers' warrantless entry into his home violated the Fourth Amendment to the United States Constitution. One of the established exceptions to the warrant requirement arises when an officer's entry into a home is authorized by the voluntary consent of the occupant. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. The issue of whether consent was voluntarily given, and not the product of duress or coercion, either express or implied, is an issue of fact to be

determined by considering the totality of circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854. The government has the burden of proving that consent was freely and voluntarily given. *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797. Several Ohio courts, including the Twelfth District Court of Appeals, have distinguished between consent to enter and consent to search, *State v. Williams* (Jan. 24, 1994), Clermont App. No. CA93–07–053, 1994 WL 18157, and applied a lesser standard for proving voluntary consent when consent to enter is at issue. *Chapman; State v. Pamer* (1990), 70 Ohio App.3d 540, 591 N.E.2d 801; *Akron v. Harris* (1994), 93 Ohio App.3d 378, 638 N.E.2d 633. In *Pamer,* the Ninth District noted that an entirely peaceful and invited entry into a home, with no search intent, can be lawful in the absence of evidence of "compulsion of authority" or implied force, citing *Davis.* In *Brook Park v. Smith* (July 13, 1995), Cuyahoga App. No. 67522, 1995 WL 415162, the Eighth District, relying upon *Pamer,* ruled that the third-party consent was voluntary where no evidence indicated that entry was obtained by "compulsion of authority" or implied force.

{¶ 11} In the case of *Sylvania v. Cellura* (Mar. 31, 1998), Lucas App. No. L–97–1086, 1998 WL 161031, officers went to the appellant's apartment to investigate a one-car accident in which they believed the appellant was involved. The appellant answered the officers' knock and opened the door, whereupon the officers entered her apartment. The court ruled that the entry was consensual, since the appellant did not object to the officers' entrance, or ask them to leave, and the officers did not use force or draw their weapons.

{¶ 12} Insofar as the issue of consent is concerned, the facts of the case sub judice are similar to *State v. Rammel* (Sept. 18, 2000), Madison App. No. CA99–10–023, 2000 WL 1336493. In *Rammel,* the defendant argued that his consent to enter the premises was not freely given and that he merely acquiesced to the police officer's claim of lawful authority when he allowed the officer inside his home. The court rejected the defendant's argument, drawing a distinction between consent to enter the defendant's home and consent to search the defendant's home. The Twelfth District recognized that a lesser standard for consent applies when the consent is for entry. The officer in *Rammel* went to the defendant's back door one evening to investigate a parking complaint. The officer intended to question the defendant and had no intention of conducting a search. The police officer identified himself and the reasons for his presence. Initially, the defendant went outside to talk to the officer, but the defendant assented to the police officer's request that they go inside, and opened the door to allow the officer to enter. No indication of coercion, trickery, or duress was presented to the court. The Twelfth District Court of Appeals agreed with the trial court's determination that "the Defense did not put on any evidence to

suggest, nor did the Defendant testify, that the Defendant did anything other than voluntarily let the Officer enter his home," and concluded that there was competent, credible evidence to support the trial court's finding that the defendant gave his consent for entry upon the premises.

{¶ 13} In consideration of the authority discussed above, this court finds there to be competent, credible evidence that the defendant consented to the officers' entry into his residence. Officers Combs and Lutson, like the officer in *Rammel*, went to the defendant's home not to conduct a search but to locate and talk to the defendant. Here, as in *Rammel*, Officer Lutson announced himself and the reason for his presence. The defendant opened his door and permitted the officers to enter. The court does not find the timing of the officers' visit to be unreasonable since the accident occurred around 9:00 p.m. and the officers went to the defendant's home around 10:30 p.m., not in the middle of the night. There is no indication of any coercion, trickery, or duress. The defense has not put on evidence to establish that the defendant's action of opening the front door and allowing the officers to enter was anything but voluntary. The facts do not indicate that the officers were being overly persistent, that they had their weapons drawn, or that their presence in any other way overwhelmed the defendant.

{¶ 14} Even if the defendant felt that he had no other option but to let the officers in, any resulting entry was, at the most, an investigatory stop, for which a reasonable, articulable suspicion existed. See *United States v. Jerez* (C.A.7, 1997), 108 F.3d 684; *State v. Stillinger* (June 26, 2000), Fairfield App. No. 00–CA–11, 2000 WL 964007; *Beachwood v. Sims* (1994), 98 Ohio App.3d 9, 647 N.E.2d 821. At the time that the officers approached the defendant's property, they knew that an individual who identified himself as Danny Holt had been in an accident and that the individual had left the scene after giving the other party his address and other pertinent information. The officers also had a description of the individual's vehicle, and the description of the vehicle matched the vehicle that was sitting in the defendant's driveway. The information given by the other party gave the officers a reasonable, articulable suspicion that the defendant had been involved in an accident and that the defendant may have been under the influence of alcohol at the time that the accident occurred.

{¶ 15} Police officers must have a reasonable suspicion of intoxication prior to conducting field sobriety tests. *Columbus v. Anderson* (1991), 74 Ohio App.3d 768, 600 N.E.2d 712. Such a reasonable suspicion must be based upon the totality of the circumstances. *State v. Wegley* (Jan. 28, 2002), Warren App. No. CA2001–07–070, 2002 WL 104630. Generally speaking, a display of the "usual physical characteristics of alcohol consumption" provides officers with a reasonable suspicion of intoxication. Id. Once Officer Lutson and Combs entered

the defendant's home, observed and interviewed the defendant, they had even more reasonable, articulable suspicion that the defendant had been driving under the influence. The defendant exhibited physical characteristics that suggested intoxication, and the officers knew that the defendant had not consumed any alcohol since the accident. Furthermore, the defendant admitted that he had been driving his vehicle. The facts supported an administration of field sobriety tests. See *Stillinger.*

{¶ 16} The defendant seeks to suppress the results of his HGN based upon two alternate claims: first, defense counsel submits that Officer Combs failed to strictly comply with National Highway Traffic Safety Administration ("NHTSA") standards by not performing the VGN, and second, defense counsel suggests that since the defendant wears eyeglasses, the results of the HGN are invalid. The testimony presented at the suppression hearing indicates that Officer Combs complied with the NHTSA standards in all other respects. If field sobriety tests are not conducted in strict compliance with standardized procedures, the tests cannot serve as evidence of probable cause to arrest a suspect for DUI. *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952. In *Homan,* the Ohio Supreme Court was concerned with the small margin of error that exists in conducting these tests, and the ultimate reliability of the results if the tests are not performed exactly as required. This court rejects the defendant's argument that *Homan* applies to the instant case since the failure to perform a VGN in no way affects the validity or reliability of the results obtained from the HGN. While the results of the VGN may be useful in indicating the presence of drugs rather than alcohol, the use of drugs is not at issue in this case. Furthermore, this court is not aware of any authority in Ohio which indicates approval of the VGN as a tool to assess alcohol consumption. See *State v. Anez* (Hancock C.P.2000), 108 Ohio Misc.2d 18, 738 N.E.2d 491, where the court excluded evidence obtained from the VGN, since it has not been approved for usage in the state of Ohio. The law does not require the doing of a vain or useless act; thus, if the results of a VGN are not admissible, then the failure of Officer Combs to conduct such a test should not render the results of the HGN inadmissible.

{¶ 17} The defendant further submits that the results of the HGN should be suppressed because he wears glasses. The defendant cites the NHTSA Student Manual, which states that the HGN should not be conducted if the suspect suffers from an obvious eye disorder. The court rejects the defendant's suggestion that the use of eyeglasses is in and of itself an "obvious eye disorder." If those with eyeglasses were not subject to the HGN, why would the standard procedures require removal of eyeglasses prior to testing? The testimony in this case in no other way suggests that the defendant had an obvious eye

disorder. In fact, the testimony of Officer Combs indicated that there were no apparent problems with the defendant's pupils prior to the HGN. Therefore, the results of the HGN are admissible.

{¶ 18} Next, the defendant seeks to suppress statements made to the officers prior to his formal arrest. He claims that under the authority of *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, he should have been informed that he was under no obligation to answer questions. The court finds that the application of *Robinette* to the instant case is inapropos since the defendant was not illegally detained at the time that he made inculpatory statements to the police officers.

{¶ 19} The defendant further claims that he was never given his *Miranda* warnings, and, thus, he seeks suppression of statements he made regarding alcohol consumption and operation of his vehicle. A police officer must give a suspect his *Miranda* warnings prior to conducting any custodial interrogation. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus, if a suspect is not *Mirandized* and gives an inculpatory statement in the course of a custodial interrogation, any such statement cannot be used against the suspect at trial. Id.; *State v. Gomez–Silva* (Dec. 3, 2001), Butler App. No. CA2000–11–230, 2001 WL 1525316. "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Staley* (May 8, 2000), Madison App. No. CA99–08–019, 2000 WL 554512, citing *Miranda*.

{¶ 20} To determine whether a suspect was in custody at the time that he made an inculpatory statement, one must determine whether the suspect was arrested, or whether there was a restraint on his freedom of movement to the degree associated with a formal arrest. *California v. Beheler* (1983), 463 U.S. 1121, 1124, 103 S.Ct. 3517, 77 L.Ed.2d 1275; *Gomez–Silva*, supra. In making this determination, the court must apply a reasonable man standard, i.e., how would a reasonable man in the defendant's position have understood the situation? *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317; *Gomez–Silva*, supra.

{¶ 21} A court must look at the totality of the circumstances in order to determine whether an individual is in custody at any given time. *Beheler*, supra. An individual is not considered to be in custody merely because he is the focus of a criminal investigation at the time that he is interviewed. *State v. Way* (Dec. 2, 1992), Medina App. No. 2106, 1992 WL 368941. In *State v. Estepp* (Nov. 26, 1997), Montgomery App. No. 16279, 1997 WL 736501, the court suggested a

number of factors to be considered in determining whether an individual is in custody:

{¶ 22} 1. What was the location where the questioning took place—i.e., was the defendant comfortable and in a place a person would normally feel free to leave?

{¶ 23} 2. Was the defendant a suspect at the time the interview began?

{¶ 24} 3. Was the defendant's freedom to leave restricted in any way?

{¶ 25} 4. Was the defendant handcuffed or told he was under arrest?

{¶ 26} 5. Were threats made during the interrogation?

{¶ 27} 6. Was the defendant physically intimidated during the interrogation?

{¶ 28} 7. Did the police verbally dominate the interrogation?

{¶ 29} 8. What was the defendant's purpose for being at the place where questioning took place?

{¶ 30} 9. Were neutral parties present at any point during the questioning?

{¶ 31} 10. Did police take any action to overpower, trick, or coerce the defendant into making a statement?

{¶ 32} The courts of this state have generally found that an individual is not in custody, and, thus, *Miranda* is not triggered when questioning takes place in the individual's home and the individual is free to move about his home as he sees fit without officers making any display of weapons or force. *In re Sherrin* (May 26, 1998), Franklin App. No. 97APF–10–1378, 1998 WL 270192; *State v. Walker* (1993), 90 Ohio App.3d 352, 629 N.E.2d 471; *Way,* supra; *State v. Walker* (Sept. 16, 1997) Franklin App. No. 97APA02–212, 1997 WL 578946; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 679 N.E.2d 321.

{¶ 33} Taking into account the factors set forth above, the court concludes that the defendant was not in custody prior to being placed under formal arrest. The defendant was in his own home when the questioning took place. There is no indication that the officers prevented the defendant from putting more clothes on prior to his arrest. The officers did not physically restrain him in any manner prior to his arrest, and there is no indication that he was prohibited from moving about his home during the interrogation. The officers did not threaten the defendant and there is no evidence of physical intimidation. Simply stated, there is no evidence that the officers used any action to overpower, trick, or coerce the defendant.

{¶ 34} Finally, the defendant asserts that his warrantless arrest was illegal, relying upon the cases of *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732, and *State v. Laudeman* (Clermont M.C.1997), No.

97TRC22548, as well as R.C. 2935.03. *Welsh* stands for the proposition that a warrantless nighttime entry into a suspect's home to arrest him for driving under the influence was prohibited by the Fourth Amendment and that the exigent circumstances exception to the warrant requirement did not apply. Likewise, in *Laudeman*, this court previously held that no exigent circumstances justified the warrantless entry of police officers into a suspect's motel room in the course of an accident investigation. The instant case differs from *Welsh* and *Laudeman* in that this case involves a consensual entry into the defendant's home. In both *Welsh* and *Laudeman* the police entered without valid consent. *Welsh* is inapplicable where the police officers gain entry to a residence by consent. *Bowling Green v. Boback* (Nov. 4, 1994), Wood App. No. 94WD026, 1994 WL 603025; *Bucyrus v. Williams* (1988), 46 Ohio App.3d 43, 545 N.E.2d 1298; *Cellura*, supra. Based upon the foregoing authorities, the court also finds *Laudeman* to be inapplicable.

{¶ 35} Pursuant to R.C. 2935.03, police officers must generally witness an offense before they make a warrantless arrest for a misdemeanor. An exception to this rule, however, has been recognized where an officer has probable cause to believe that the suspect was operating a vehicle while under the influence of alcohol. *State v. Henderson* (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104; *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742; *Middletown v. McGuire* (Oct. 9, 1995), Butler App. No. CA 94–11–202, 1995 WL 591238. An officer has probable cause when, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a prudent man to believe that the suspect has committed an offense. *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. One must look to the totality of the facts and circumstances in order to determine whether probable cause exists. *State v. Finch* (1985), 24 Ohio App.3d 38, 40, 24 OBR 61, 492 N.E.2d 1254. In *Boback*, the Sixth District ruled that the officer had probable cause to arrest the defendant, who was in an apparent state of inebriation and admitted not only that she had been driving the car involved in a nearby accident, but that she had not consumed any alcohol since the accident.

{¶ 36} The officers in this case had probable cause to believe that the defendant operated his vehicle while under the influence of alcohol. The defendant admitted that he had been drinking prior, but not subsequent, to the accident. He also admitted that he was driving his vehicle at the time of the accident. The officers observed physical manifestations consistent with intoxication, i.e., the defendant smelled of alcohol, had slurred speech, glassy, bloodshot eyes, and a slow gait. The results of the field sobriety tests provided additional evidence that the defendant was, in fact, intoxicated. The court finds that the

defendant's arrest did not violate R.C. 2935.03. Furthermore, even if the defendant's arrest had run afoul of R.C. 2935.03, the violation of this statutory provision does not have constitutional implications which require the suppression of evidence. *McGuire*, supra.

## CONCLUSION

{¶ 37} Based upon the competent, credible testimony of the witnesses and the case law presented herein, the court finds that no suppression of evidence is warranted, inasmuch as the defendant was not subjected to an unreasonable search or seizure. The results of the field sobriety tests, specifically the HGN, are admissible, since there has been no showing that the reliability of the tests has been compromised in any manner. The defendant's statements are not subject to suppression because they were neither the product of an illegal detention, nor obtained while the defendant was in custody. The defendant's motion to dismiss and/or suppress is overruled in its entirety.

Motion denied.