[Cite as *State v. Littell*, 2014-Ohio-4654.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27020 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN A. LITTELL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 08 2442 |

DECISION AND JOURNAL ENTRY

Dated: October 22, 2014

HENSAL, Presiding Judge.

{¶1} Defendant-Appellant, Brian Littell, appeals from the judgment of the Summit County Court of Common Pleas, denying his motion to suppress. This Court reverses.

I.

{¶2} On August 20, 2012, three law enforcement officials tasked with marijuana eradication were conducting aerial surveillance of Summit County. One of the officials, Kim Nusser, spotted what he believed to be marijuana plants growing in the backyard of a residence in Bath. He also recalled that, two years prior, he had spotted marijuana growing at that same residence. Agent Nusser relayed the location of the residence to law enforcement officials on the ground. He also relayed that there was a "stockade-like fence" surrounding the backyard of the residence and abutting the house, but that the back side of the fence appeared to be down. Accordingly, only two sides of the fence (those abutting the house on each side) were standing.

{¶3} One officer on the ground knocked on the front door of the residence, but no one answered. Other officers went into the backyard. Officer Michael Yovanno, the only officer on the ground who testified at the later suppression hearing, testified that he remained at the front door while his colleagues walked to the back of the house. Officer Yovanno testified that, by the time he walked to the back of the house, his colleagues had removed the marijuana plants from their pots. According to Officer Yovanno, his fellow officers told him that the marijuana was in plain view when they walked to the back of the house.

{¶4} Once the police entered the backyard, they were able to observe a ventilation system at the rear of the house and Officer Yovanno was able to detect the odor of marijuana in the ventilated air. Subsequently, Officer Yovanno obtained a search warrant for a search of the residence, which belonged to Mr. Littell. The search of the residence uncovered equipment used to grow marijuana and multiple firearms.

{¶5} A grand jury indicted Mr. Littell on charges of illegal cultivation of marijuana and having weapons while under disability. Mr. Littell initially pleaded not guilty to the charges and filed a motion to suppress. After the trial court denied his motion, however, Mr. Littell withdrew his initial plea and pleaded no contest to both charges. The trial court sentenced him to a fine and 36 months of community control.

{¶6} Mr. Littell now appeals and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR
WHEN IT DENIED [MR.] LITTELL'S MOTION TO SUPPRESS.

{¶7} In his sole assignment of error, Mr. Littell argues that the trial court erred by denying his motion to suppress. We agree.

**{¶8}** The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

**{¶9}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002). The same is true with respect to curtilage, as curtilage is "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 133 S.Ct. 1409, 1414 (2013), quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984). "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). The State bears the burden of establishing that one of the exceptions applies. *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978). One such exception is the plain view exception. *State v. Underwood*, 9th Dist. Medina No. 10CA0048-M, 2011-Ohio-5703, ¶ 11, quoting *State v. Akron Airport Post No. 8975, Veterans of Foreign Wars of U.S.*, 19 Ohio St.3d 49, 51 (1985).

**{¶10}** Under the plain view exception, "an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was 'immediately apparent' that the item was incriminating." *State v. Waddy*, 63 Ohio St.3d 424, 442 (1992), *superseded on*

*other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. "The discovery need not be inadvertent." *Waddy* at 442, fn. 5, citing *Horton v. California*, 496 U.S. 128 (1990). The officer must, however, "be lawfully located in a place from which the object can be plainly seen" and have "a lawful right of access to the object itself." *Horton* at 137. *Accord Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971). The plain view exception gives rise to probable cause, but it does not allow an officer to unlawfully trespass upon property to seize an item in the absence of a warrant, consent, or some other recognized exigency. *Soldal v. Cook County, Ill*, 506 U.S. 56, 66 (1992); *Texas v. Brown*, 460 U.S. 730, 738-739 (1983).

{¶11} In this case, the State does not dispute that Mr. Little's backyard was his curtilage. Because the police did not have a warrant when they entered onto Mr. Littell's curtilage, the burden fell upon the State to demonstrate the existence of an exigent circumstance. *See Kessler* at 207. The record reflects that the State failed to meet its burden.

{¶12} Agent Nusser, a member of the Bureau of Criminal Identification and Investigation's narcotics section, testified that he was certified in cannabis aerial observation and was acting as a spotter on August 20, 2012. While observing residences in the Bath area from the air, Agent Nusser spotted what he believed to be several marijuana plants in the backyard of one particular residence. He testified that the backyard of the residence had a "stockade-like fence," but that the back side of the fence was not in an upright position. Specifically, it appeared to have been "taken down or blown down." Agent Nusser recalled that he had spotted marijuana growing at the same residence two years earlier and relayed his observations to officers on the ground. He could not remember where the plants were located in the backyard, but did recall that he did not see any people around the residence the entire time he observed it. The helicopter hovered over the residence until the officers on the ground arrived.

**{¶13}** Rather than apply for a warrant based on the aerial observation that had occurred, officers on the ground approached Mr. Littell's house and attempted to establish contact. Officer Yovanno was the only officer on the ground who testified at the suppression hearing. He testified that he knocked on the front door of the residence, but no one answered. He also testified, however, that there were other "detectives who went to the rear of the residence to see if they could see any movement inside or attempt to make contact at any other door of the residence."

**{¶14}** Officer Yovanno testified that he did not immediately walk to Mr. Littell's backyard. Rather, he was at the front door of the house while other officers were "around back." When "a certain amount of time" had passed and no one had answered the front door, Officer Yovanno walked to the backyard. By the time Officer Yovanno walked to the back of the house, other officers had already entered the backyard and pulled all of the marijuana plants growing there from their pots. Officer Yovanno testified that he did not know where his fellow officers were standing when they observed the plants. The other officers told him that the plants were in plain view when they came into the backyard. He testified that he secured a warrant to search the house after the marijuana had been seized and after he saw a ventilation system on the house and detected the odor of marijuana coming from the ventilated air.

**{¶15}** The trial court assumed for purposes of its analysis that Mr. Littell had a privacy interest in his backyard, but determined that the police did not violate his rights when they entered it. The court wrote:

> When no one answered the front door, Officer Yovlanno (sic) went around to the back yard to knock on the back door in an attempt to question whoever may have been at home. Once in the back yard, Officer Yovlanno (sic) observed the marijuana plants that had been observed from the air. Officer Yovlanno (sic) then obtained a warrant to search defendant's residence.

* * *

> [T]he officers did not seize the plants immediately, but used this information in an affidavit for a search warrant.

The court noted that "[o]ther courts have held that an officer's entrance into a backyard, after receiving no response at the front door, was not a violation of a person's Fourth Amendment right." It then held that the initial intrusion by the police into Mr. Littell's backyard was lawful and, once they were there, the items in the backyard were in plain view. Consequently, the court denied Mr. Littell's motion to suppress.

{¶16} "This Court must only accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Figueroa*, 9th Dist. Lorain No. 09CA009612, 2010-Ohio-189, ¶ 20. The record does not support the court's finding that officers waited until a warrant was secured to seize the marijuana plants. Officer Yovanno specifically testified that he did not seek a warrant until after the police entered Mr. Littell's backyard and seized the plants. We, therefore, reject the trial court's erroneous factual finding. *See Figueroa* at ¶ 20. In any event, the real problem in this case is that the police used the information they obtained from their entry onto Mr. Littell's curtilage to secure a warrant to search his home. As previously noted, the trial court held that the initial intrusion by the police into Mr. Littell's backyard was lawful and, once they were there, the marijuana plants were in plain view. We review the trial court's legal conclusions, as applied to the facts of this case, de novo. *See Tallmadge v. Barker*, 9th Dist. Summit No. 24414, 2009-Ohio-1334, ¶ 16-19.

{¶17} The record supports the conclusion, and Mr. Littell concedes, that the aerial observation the police conducted here provided the police with probable cause for a warrant. *See California v. Ciraolo*, 476 U.S. 207, 212-214 (1986). The fact that the police had probable cause, however, did not give them the authority to enter Mr. Littell's property and seize the

marijuana. *See Soldal*, 506 U.S. at 66; *Brown*, 460 U.S. at 738-739. *See also Katz*, 389 U.S. at 357, quoting *Agnello v. United States*, 269 U.S. 20, 33 (1925) ("Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause * * *'."). "It is * * * an essential predicate to any valid warrantless seizure of incriminating evidence that the [police] did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton*, 496 U.S. at 136. To seize contraband under the plain view exception, the police must "be lawfully located in a place from which the object can be plainly seen" *and* have "a lawful right of access to the object itself." *Id.* at 137. *Accord Coolidge*, 403 U.S. at 466. The marijuana plants were plainly seen from the air; a place where the police had a lawful right to be. The question, therefore, is whether the police had a lawful right of access to the marijuana.

{¶18} There are sparse facts in the record about the layout of Mr. Littell's backyard. The State only presented the testimony of one of the officers who responded to Mr. Littell's house. That officer was Officer Yovanno. Officer Yovanno was not one of the officers who initially went into Mr. Littell's backyard because he was busy knocking on the front door. It is not clear from his testimony when the other officers actually went into Mr. Littell's backyard. That is, it is not clear whether they waited for a response at the front door or whether they immediately proceeded to the backyard upon their arrival. Moreover, Officer Yovanno was unable to recall anything about the fence in Mr. Littell's backyard, other than the fact that it had two sides. There was no testimony regarding its height.[1] There was no testimony regarding its length. There was no testimony to indicate how the officers saw around it (e.g., whether they

---

[1] One picture captures the back of the house and depicts a small portion of the fence on each side of the house. The fence is solid and high enough that it reaches the second-story deck on the back of the house.

walked its length to the downed side, peered over it, or accessed a gate). Additionally, there was no testimony regarding where the officers were standing when they observed the marijuana plants. Officer Yovanno testified that his colleagues told him the plants were in plain view. Because the police entered Mr. Littell's backyard without a warrant, it was the State's burden, not Mr. Littell's, to set forth evidence of an exigent circumstance. *See Kessler*, 53 Ohio St.2d at 207.

{¶19} While the deficiencies in the record in this matter are troubling, even more troubling is the State's insistence that its officers were within their right to enter Mr. Littell's backyard. According to the State, its officers did not need a warrant to knock on Mr. Littell's back door because they "were in an area where any 'reasonably respectful citizen' was permitted to go." It appears to be the State's position that its officers, knowing full well that Mr. Littell had contraband in his backyard, could enter his backyard for the stated purpose of establishing contact and, as soon as they saw the contraband they knew to be there, could lawfully seize the contraband. The Fourth Amendment cannot possibly be construed to condone such a practice.

{¶20} Police officers may approach a home, knock on its front door, and speak to its residents without a warrant "because that is 'no more than any private citizen might do.'" *Jardines*, 133 S.Ct. at 1416, quoting *Kentucky v. King*, 131 S.Ct. 1849, 1862 (2011). Custom dictates that, absent indications to the contrary, every homeowner has given an implied license to visitors for just that purpose. *Jardines* at 1415. That license "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* The license "is limited not only to a particular area but also to a specific purpose." *Id.* at 1416. "[T]he * * * social norms that invite a visitor to the front door do not invite him there to conduct a search." *Id. See also id.* at 1422-1423 (Alito,

J., dissenting) ("A visitor cannot traipse through the garden, meander into the backyard, or take other circuitous detours that veer from the pathway that a visitor would customarily use."). Quite apart from any reasonable expectation of privacy analysis, "[t]hat [] officers learned what they learned only by physically intruding on [a person's] property to gather evidence is enough to establish that a search occurred." *Id.* at 1417.

{¶21} This case is distinct from cases where the police circle around a house in a good-faith attempt to establish contact with a specific person, having no prior knowledge that contraband is present. *See, e.g., State v. Tallent*, 6th Dist. Lucas No. L-10-1112, 2011-Ohio-1142; *State v. Holt*, 119 Ohio Misc.2d 1, 2002-Ohio-3345 (M.C.); *U.S. v. Raines*, 243 F.3d 419 (8th Cir.2001). The police here entered Mr. Littell's backyard knowing full well that marijuana was being grown there. Moreover, the State failed to produce any evidence that the officers who entered Mr. Littell's backyard made any effort at all to establish contact with someone inside the house. The only officer on the ground who testified was Officer Yovanno. His testimony was that, by the time he walked to the backyard, his fellow officers had already seized the marijuana growing there. Officer Yovanno had no knowledge of what his fellow officers actually did when they entered Mr. Littell's backyard. Thus, the State failed to set forth any evidence from which one could objectively conclude that the officers who entered Mr. Littell's backyard did so for any reason other than to seize the marijuana they knew to be there.

{¶22} "[T]he ultimate touchstone of the Fourth Amendment is reasonableness * * *." (Internal quotations and citations omitted.) *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Under the facts of this case, the police failed to act reasonably. Agent Nusser relayed to the officers on the ground that he had not seen anyone around Mr. Littell's residence the entire time the helicopter hovered there. The suspected contraband in this case was marijuana, not a

dangerous implement. Moreover, nothing in the record even suggests that any evidence would have been destroyed if the police had obtained a warrant before entering the backyard. *See Johnson v. U.S.*, 333 U.S. 10, 15 (1948). The only exigent circumstance the State argued was plain view. The plain view doctrine does not apply, however, because the police were not within their right to enter Mr. Littell's backyard. *See Jardines*, *supra*. *See also Horton*, 496 U.S. at 136-137 (plain view requires that officers "be lawfully located in a place from which the object can be plainly seen" and have "a lawful right of access to the object itself").

{¶23} Had the police first secured a warrant for the backyard based on the aerial observation,[2] the police then could have lawfully entered the backyard and the items there, including the ventilation system, would have been in plain view. The officers could have then used their additional observations as probable cause for a warrant to search the house. It was unreasonable for the police to enter Mr. Littell's backyard and seize evidence without a warrant. *See State v. Mims*, 6th Dist. Ottawa No. OT-05-030, 2006-Ohio-862, ¶ 14-26; *State v. Vondenhuevel*, 3d Dist. Logan No. 8-04-15, 2004-Ohio-5348, ¶ 15-20. The trial court, therefore, erred when it denied Mr. Littell's motion to suppress.

III.

{¶24} Mr. Littell's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

---

[2] We note that not only was the warrant secured after the entrance into the backyard, but also that the record does not contain a copy of the affidavit in support of the warrant the police obtained after entering the backyard. The affidavit is absent from the exhibit of the warrant the court admitted (Exhibit B).

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

MOORE, J.
DISSENTING.

{¶25} Because I would affirm the trial court's decision to deny Mr. Littell's motion to suppress, I respectfully dissent.

{¶26} This Court decided a case remarkably similar to the one at hand in *State v. Curto*, 73 Ohio App.3d 16 (9th Dist.1991). In *Curto*, the police came to Mr. Curto's property after receiving a tip that he was growing marijuana in his backyard. While standing on the public

sidewalk, the police observed the tops of several marijuana plants growing in Mr. Curto's backyard. The police then knocked on Mr. Curto's front door, but received no response. After receiving no response, the police entered Mr. Curto's backyard and seized the marijuana. The officers seized the marijuana without a warrant and without receiving permission from Mr. Curto. In upholding the denial of Mr. Curto's motion to suppress, we held that Mr. Curto could not claim a legitimate expectation of privacy in his marijuana plants because they were "so easily viewed by the public." *Curto* at 18. We held that "[w]hat a person exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 351 (1967).

{¶27} While the record does not contain a great deal of information about the layout of Mr. Littell's backyard, there is no dispute that the entire backside of his fence was down. There was testimony that the police were able to observe the marijuana growing in Mr. Littell's backyard (1) from the air, and (2) from the ground once they walked to the backyard. Because an entire side of Mr. Littell's fence had been either "taken down or blown down," the police did not need to actually step foot into the backyard to observe the marijuana. The marijuana was plainly visible from the downed side of the fence. Accordingly, Mr. Littell had no legitimate expectation of privacy in it, and the police did not violate his Fourth Amendment rights by seizing it. *See Curto* at 18. *See also Waddy*, 63 Ohio St.3d at 442 (plain view exception defined). Moreover, once the police entered the backyard to seize the marijuana, the other items there (e.g., the ventilation system) were in plain view. As such, the police could rely upon the observations they made in the backyard to secure a warrant for the search of Mr. Littell's home.

{¶28} The trial court correctly denied Mr. Littell's motion to suppress. Therefore, I would overrule Mr. Littell's assignment of error and affirm the judgment of the trial court.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.